IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SOLAR MICRONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANITHA REDDY, as the heir to | ) | 22 CV 4921 |
| VENKHAT REDDY, | ) | |
| | ) | Magistrate Judge Jeffrey I. Cummings |
| Defendant. | ) | |
| | ) | |
| ANITHA REDDY, as the heir to | ) | |
| VENKHAT REDDY, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| SOLAR MICRONICS, INC., and | ) | |
| HAWTHORNE DEVELOPMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Solar Micronics, Inc. ("Solar") initiated this action against defendant Anitha Reddy, as the heir to decedent Venkat Reddy, alleging breach of contract arising out of a contract for the installation of a solar energy system at an apartment complex in Virginia.[1] (*See* Dckt. #1-1 – First Amended Complaint). In turn, Reddy filed a counterclaim, (Dckt. #15), against counter-defendants Solar and its parent company Hawthorne Development Corporation ("Hawthorne"), bringing claims for violation of the Illinois Credit Services Organizations Act,

---

[1] Solar first brought this action against Venkat Reddy in the Circuit Court of Cook County in July 2021. (Dckt. #1-1 at 27). Venkat passed away in November 2021, and the Circuit Court Judge entered an order substituting Anitha Reddy on May 11, 2022. (*Id.* at 7). Anitha subsequently removed this case to Federal Court. (Dckt. #1).

1

815 ILCS 605/1 *et seq.*, fraud under the Illinois Consumer Fraud and Deceptive Businesses Practices Act, 815 ILCS 505/1 *et seq.*, and, in the alternative, unjust enrichment. Solar and Hawthorne now move to dismiss the counterclaim in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss, (Dckt. #16), is granted in part and denied in part.

I.     BACKGROUND

Reddy alleges the following in her counterclaim. Solar is a subsidiary of Hawthorne, through which Hawthorne offers a variety of solar development services. (Dckt. #15 at ¶¶4, 7). Hawthorne represents on its website that Solar is an "EPC (engineering, procurement, and construction) company, specializing in the design and installation of rooftop solar systems." (*Id*. at ¶7). Hawthorne further claims to offer "full-fledged, comprehensive development services for its clients," including financing. (*Id*. at ¶8). Dr. Ganesan Visvabharathy is the founder and president of Hawthorne and acts as the founder and president of Solar. (*Id*. at ¶5).

In or about January 2019, Dr. Visvabharathy offered to provide Venkat Reddy advice and/or assistance in obtaining an extension of credit to pay for the installation of a solar energy system at the Lee Theater Lofts apartment complex in Virginia. (Dckt. #15 at ¶9). Dr. Visvabharathy proposed that Solar would perform the installation of the solar energy system and handle the application for obtaining all tax credits and incentives. (*Id*.). Dr. Visvabharathy represented to Venkat that he could obtain 100% financing for the installation of the solar energy system, and that with the tax credits, incentives, and decreased energy costs, the project would "pay for itself." (*Id*. at ¶9). Hawthorne proposed that in exchange for its assistance in obtaining the financing for the installation of the solar energy system, it would charge Venkat a "customary

2

fee" of 2% of the financed amount, which Hawthorne "intended" to be a separate charge and not part of the overall transaction for the installation of the solar energy system. (*Id*. at ¶11).

Reddy alleges that Dr. Visvabharathy understood that any agreement to install the solar energy system at the Lee Theater Lofts was contingent on Solar/Hawthorne arranging financing for the entire project on the terms proposed by Solar/Hawthorne. (*Id*. at ¶10). Dr. Visvabharathy also understood that the Lee Theater Lofts was undergoing renovations, and that the installation of the solar energy system would have to be performed before the completion of the renovation project and in a reasonable manner and time so as not to delay the renovations. (*Id*.).

In or about January 2019, Hawthorne "charged and/or received" a payment for $15,000 purportedly for services related to its offer to obtain financing. (Dckt. #15 at ¶12). In or about December 2019, Solar "charged and/or received" a payment in the amount of $10,000 related to its offer to obtain financing. (*Id*. at ¶13). Ultimately, although they failed to arrange financing under the terms that Dr. Visvabharathy promised, and the solar energy system was never installed, Hawthorne and Solar never returned the $25,000 they received. (*Id*. at ¶¶14-15).

II.     **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint or counterclaim must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1067 (N.D.Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015) (citing *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001)). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While the required level of specificity is not easily quantified,' a plaintiff must allege 'enough details about the subject-

3

matter of the case to present a story that holds together." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (internal quotation marks omitted). Pleading only "labels and conclusions" or only "a formulaic recitation of the elements of a cause of action" will not suffice, nor will pleading facts that are "merely consistent" with a defendant's liability. *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 557. If a complaint fails to meet this standard, it may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

Finally, the Court construes "the complaint in the light most favorable to the plaintiff[ ], accepting as true all well-pleaded facts and drawing reasonable inferences in the plaintiff[']s favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). However, the Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id.*

### III.   ANALYSIS

Again, Reddy asserts three claims against Hawthorne and Solar for: (1) violation of the Illinois Credit Services Organizations Act, 815 ILCS 605/1 *et seq.*; (2) fraud under the Illinois Consumer Fraud and Deceptive Businesses Practices Act, 815 ILCS 505/1 *et seq.*; and (3) in the alternative, unjust enrichment. Co-defendants Hawthorne and Solar move to dismiss each claim under Rule 12(b)(6).

### A.   Reddy has properly stated a claim under the Illinois Credit Services Organizations Act.

In Count I, Reddy alleges that counter-defendants violated the Illinois Credit Services Organizations Act ("CSOA") by, *inter alia*, charging and receiving the 2% fee (or $25,000) to assist Reddy in obtaining financing for the installation of the solar energy system prior to the full and complete performance of those services and making misleading representations in its offer to assist Reddy with the financing. Counter-defendants now move to dismiss the claim, arguing that they are not "credit services organizations," as defined by the CSOA and that the statute,

therefore, does not govern their conduct.

The CSOA prohibits "credit services organizations" from, among other things, charging or receiving" any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer" and from making or using any "untrue or misleading representations in the offer or sale of the services of a credit services organization." 815 ILCS 605/5(1), (4). The Act defines a "buyer" as "an individual who is solicited to purchase or who purchases the services of a credit services organization." 815 ILCS 605/3(a). The Act further defines a "credit services organization" as:

> [A] person who, with respect to the extension of credit by others and in return for the payment of money or other valuable consideration, provides, or represents that the person can or will provide, any of the following services:
>
> (i) improving a buyer's credit record, history, or rating:
>
> (ii) obtaining an extension of credit for a buyer; or
>
> (iii) providing advice or assistance to a buyer with regard to either subsection (i) or (ii).

815 ILCS 605/3(d).

As the Illinois Supreme Court has explained, the CSOA is "aimed at remedying problems encountered by consumers seeking to improve their credit history or rating, obtain more favorable terms on current debt, or obtain an extension of credit through services provided by credit services organizations." *Midstate Siding & Window Co. v. Rogers*, 789 N.E.2d 1248, 1254 (Ill. 2003). As such, the CSOA "is not intended to regulate retailers primarily engaged in the business of selling goods and services to their customers" because "[t]he goods and services provided by retailers are not generally services aimed at improving the consumer's credit or

5

obtaining an extension of credit for the consumer, otherwise unattainable because of the consumer's poor credit history or rating." *Id*. at 1255.

According to counter-defendants, because they are primarily engaged in the business of selling goods and services – i.e., the installation of solar energy systems – and offered financing solely in connection to their offer of those services, they do not qualify as "credit services organizations" under the scope of the CSOA. However, because Reddy has alleged that counter-defendants charged and received a separate fee as *additional* consideration *solely* for procuring financing, she has sufficiently stated a claim under the CSOA as the Illinois Supreme Court has interpreted this Illinois statute.[2]

Like Reddy, the Court finds the holding of *Midstate Siding & Window Co. v. Rogers*, 789 N.E.2d 1248 (Ill. 2003) and its progeny to be instructive. In *Midstate*, the Illinois Supreme Court held that a home remodeling business that forwarded its customer's credit application to obtain financing was not a credit services organization under the CSOA. In so holding, the Court explained:

> [I]t is clear that the Credit Services Act regulates transactions involving the payment of money or other valuable consideration in return for the services of the credit services organization. In turn, the services of the credit services organization are "improving a buyer's credit record, history, or rating"; "obtaining an extension of credit for a buyer"; or "providing advice or assistance to a buyer" with regard to "improving a buyer's credit record, history, or rating" or with regard to "obtaining an extension of credit" for the buyer. Thus, the Credit Services Act *requires payment for credit services*, not simply payment for other goods or services.

*Midstate*, 789 N.E.2d at 1253 (emphasis added). And, because the contract at issue in *Midstate* did *not* provide for the payment of money or other valuable consideration in return for credit

---

[2] It is well-settled that this Court, when sitting in diversity, must "determine the content of state law as the highest court of the state would interpret it." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002).

services, the Act did not apply. *Id*. Thus, as the dissenting opinion in *Midstate* makes clear, the Illinois Supreme Court has interpreted the CSOA to require a plaintiff to show "'additional consideration'" in exchange for credit services to state a claim under the statute. *Midstate*, 789 N.E.2d at 1255 (Kilbride, J., dissenting).

Here, in contrast to the facts in *Midstate*, Reddy *has* alleged the requisite additional consideration in the way of the separate 2% fee (or $25,000) that counter-defendants charged, and Reddy paid, *solely* in exchange for the procurement of financing. (Dckt. #15 at ¶11). Thus, because Reddy has alleged that she gave valuable consideration specifically for the credit services performed and not simply for other goods or services, the Court finds that she has stated a claim under the CSOA.

Although neither the parties nor the Court have located a case with a fact pattern analogous to the one alleged here, the holdings of other courts applying *Midstate* implicitly support the above result. For example, in *Cannon v. William Chevrolet/Geo, Inc.*, the Illinois Appellate Court held that a car dealership was not covered under the CSOA where there "was no evidence presented in the record" that "[plaintiff] paid a fee or gave other valuable consideration relating solely to the efforts made in obtaining the extension of credit . . . [or] transferred money or its equivalent to the dealership specifically for credit services." *Cannon v. William Chevrolet/Geo, Inc.*, 794 N.E.2d 843, 851 (Ill.App. 2003). Similarly, in *Thele v. Sunrise Chevrolet, Inc.*, the Court held that a car dealership was not covered where it was "primarily in the business of selling automobiles, not the business of improving customers' credit or obtaining credit for them" *and* the plaintiff did not provide additional consideration to the dealership in exchange for the credit services. No. 03 C 2626, 2004 WL 1194751, at *6 (N.D.Ill. May 28, 2004). The implication is that the plaintiffs in *Cannon* and *Thele* would have stated a CSOA

7

claim if – like Reddy – they had alleged that they paid a separate fee as consideration for the defendants' credit services.

For these reasons, Reddy has stated a claim under the CSOA and counter-defendants' motion to dismiss is denied with respect to Count I.

### B. Reddy has failed to state a claim for promissory fraud.

In Count II, Reddy incorporated the facts described above and asserted that counter-defendants violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") by "virtue of [their] misrepresentations regarding their quality and workmanship and regarding [their] ability to perform [the] work in a reasonable time." (Dckt. #15 at ¶27). Counter-defendants now move to dismiss Count II, arguing that Reddy has failed to meet the heightened pleading standard required for ICFA claims pursuant to Federal Rule of Civil Procedure 9(b).[3]

In response to the motion, Reddy does not attempt to articulate how she states a claim under ICFA; instead, she asserts that she has alleged a valid claim for common law promissory fraud under Illinois law. (*See* Dckt. #22 at 5-6). Because "mislabeling a claim is not fatal," the Court will construe Count II as a purported claim for promissory fraud as Reddy desires. *Smith v. Lutheran Life Ministries*, No. 21 C 2066, 2021 WL 5937789, at *3 (N.D.Ill. Dec. 16, 2021), *reconsideration denied*, No. 21 C 2066, 2023 WL 3602679 (N.D.Ill. May 23, 2023) ("[A]lleged facts establish whether there is a right to relief, not alleged legal theories"); *see also Hall v. Ethicon, Inc.*, No. 3:20-CV-516-RLM-MGG, 2020 WL 6826489, at *3 (N.D.Ind. Nov. 20, 2020)

---

[3] To state an ICFA claim, a plaintiff must plead: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Hodorovych v. Dollar Gen. Corp.*, No. 22-CV-03415, 2023 WL 3602782, at *2 (N.D.Ill. May 23, 2023), *quoting Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005).

8

(observing that courts have "declined to dismiss claims simply because they were mislabeled at the pleadings stage.").

Promissory fraud is the "misrepresentation of the intent to perform future conduct" and is not generally actionable as fraud under Illinois law. *Kane v. Bank of Am.*, No. 13 C 8053, 2015 WL 3798142, at *4 (N.D.Ill. June 17, 2015); *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831, at *5 (N.D.Ill. Aug. 23, 2012) ("[U]nder Illinois law there is a general prohibition against claims for promissory fraud, lest every claim for breach of contract also sounds in tort."); *see also Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) ("Promissory fraud "is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove."). However, Illinois courts recognize an exception "such that a false promise of future performance is actionable if it 'is part of a scheme or device to defraud another of her property.'" *Kane*, 2015 WL 3798142, at *4, *quoting Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 826 N.E.2d 970, 977 (Ill.App. 2005). As the Seventh Circuit explained:

> [P]romissory fraud is actionable only if either it is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy.

*Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995).

Thus, to survive a motion to dismiss, "a claimant relying on a theory of promissory fraud must . . . aver specific, objective manifestations of fraudulent intent – of a scheme or device to defraud." *Haught*, 2012 WL 3643831, at *7; *Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 570 (7th Cir. 2012) ("To invoke the scheme exception, the plaintiff must allege and then prove that, at the time the promise was made, the defendant did not intend to fulfill it."). And, of course, a plaintiff alleging fraud must satisfy the heightened pleading standard of Rule 9(b). Fed.R.Civ.P. 9(b). Under that standard, a "plaintiff ordinarily must describe the 'who, what,

9

when, where, and how' of the fraud – 'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F. 3d 770, 776 (7th Cir. 2016), quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F. 3d 849, 853 (7th Cir. 2009).

As pled, Reddy's allegations fall short of Rule 9(b)'s heightened pleading standard for a claim for promissory fraud. Again, Reddy alleges only generally that Dr. Visvabharathy offered to provide advice and assistance in obtaining financing for the installation of the solar energy system, collected $25,000 to do so, and then failed to arrange the financing. This is far from the well-pled factual allegations showing "a pattern of fraudulent statements, or one particularly egregious fraudulent statement" that courts have found sufficient to state a claim for promissory fraud. *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011); *see e.g.*, *Haught*, 2012 WL 3643831, at *7 (finding that a specific series of representations made by defendant could plausibly be seen to entice customers); *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at *19 (N.D.Ill. April 28, 2003) (inducing elderly plaintiff to take out two mortgages to remodel her home, forging her signature on documents, and doing minimal work while collecting $75,000 was sufficient to state a claim ); *Asad v. Hartford Life Ins. Co.*, 116 F.Supp.2d 960, 964 (N.D.Ill. 2000) (insurance company's nationwide scheme to maintain or increase insurance premium income by encouraging its agents to engage in fraudulent sales practices was sufficient).

Simply put, Reddy's vague allegation of one unfulfilled promise – along with a formulaic recitation of the elements of the cause of action – are not enough. *Iqbal*, 556 U.S. at 678. The Court will, however, grant Reddy's request for leave to replead her claim for promissory fraud. *See* Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave [to replead] when justice so requires."); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to

state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."). Accordingly, Count II is dismissed without prejudice with leave to replead on or before August 7, 2023.

      **C.    Reddy's claim for unjust enrichment cannot stand alone upon dismissal of her promissory fraud claim.**

Lastly, in Count III, Reddy asserts a claim for unjust enrichment, alleging that counter-defendants unjustly retained a benefit to Reddy's detriment when they received $25,000 to obtain the financing but failed to do so. Counter-defendants seek to dismiss this claim, arguing that Reddy cannot bring a claim for unjust enrichment where she has alleged an express agreement between the parties, and then incorporated those allegations into her claim for unjust enrichment. The Court need not resolve this dispute, however, because Reddy's claim for unjust enrichment cannot stand alone after dismissal of the claim for promissory fraud.[4]

"Unjust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F.Supp.2d 619, 622 (N.D. Ill. 2008). "To state a claim for unjust enrichment under Illinois law, a 'plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.'" *Rudy v. Fam. Dollar Stores, Inc.*, 583 F.Supp.3d 1149, 1166 (N.D.Ill. 2022), *quoting Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). However, under Illinois law, "unjust enrichment is not a separate cause

---

[4] The Court notes that counter-defendants are correct to the extent that "unjust enrichment is a viable legal theory only if there is no contract in the first place." *Delisle v. McKendree University*, --- F.4th ----, 2023 WL 4487520, at *5 (citing *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886-87 (7th Cir. 2022)). On the other hand, "an unjust enrichment claim may survive a motion to dismiss when the validity or the scope of the contract is difficult to determine," as the parties assert here. *Gocimen*, 41 F.4th at 887. But again, the Court need not resolve this dispute at this time.

11

of action." *Castaneda v. Amazon.com, Inc.*, No. 22-CV-3187, 2023 WL 4181275, at *13 (N.D.Ill. June 26, 2023), *quoting Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence . . ." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017).

Where, as here, "the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007); *Vanzant*, 934 F.3d at 740 ("The request for relief based on unjust enrichment is tied to the fate of the claim under the Consumer Fraud Act."). Because the Court has dismissed plaintiff's claim for promissory fraud without prejudice, Reddy's claim for unjust enrichment is also dismissed without prejudice with leave to replead on or before August 7, 2023.

## CONCLUSION

For all of the above reasons, counter-defendants Solar and Hawthorne's motion to dismiss the counterclaim, (Dckt. #16), is denied with respect to Count I (CSOA claim) and granted with respect to Count II (promissory fraud) and Count III (unjust enrichment). Counts II and III are dismissed without prejudice with leave to replead on or before August 7, 2023.

**DATE: July 17, 2023**

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**