## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SOLAR MICRONICS, INC., an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ANITHA REDDY, as the heir to VENKAT REDDY, | ) | Case No. 1:22-cv-4921 |
| | ) | |
| Defendant. | ) | Magistrate Judge Jeannice W. Appenteng |
| _____ | ) | |
| ANITHA REDDY, as the heir to VENKAT REDDY, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOLAR MICRONICS, INC., an Illinois corporation, and HAWTHORNE DEVELOPMENT CORPORATION, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Solar Micronics, Inc. claims it entered into a binding contract with Venkat Reddy ("Mr. Reddy") to install a solar energy system at an apartment complex in Virginia. Plaintiff accuses Mr. Reddy of terminating the agreement without legal basis and filed this breach of contract action seeking to recover in full for the project. Alternatively, plaintiff argues that it is entitled to payment because Mr. Reddy agreed to proceed with the project in exchange for settling this lawsuit. Since Mr. Reddy died in November 2021, plaintiff's widow Anitha Reddy has been

substituted as the named defendant in her capacity as Mr. Reddy's heir. Currently before the Court is defendant's motion for summary judgment. Defendant argues that plaintiff's breach of contract claims fail as a matter of law because plaintiff cannot establish that it reached a meeting of the minds with Mr. Reddy as to the material terms of a contract or settlement agreement. For the reasons stated here, the motion is granted.

## BACKGROUND

Plaintiff is an Illinois corporation with its principal place of business in Cook County, Illinois. Dkt. 109 ¶ 1.[1] Owned by Dr. Ganesan Visvabharathy ("Dr. Vish")[2] and Yolanda Contreras, the company designs and installs solar power systems. *Id.* ¶ 7. Mr. Reddy was a resident of the Commonwealth of Virginia until his death on November 15, 2021. *Id.* ¶ 2. Defendant Anitha Reddy is a resident of the Commonwealth of Virginia. *Id.* ¶ 3.

### A. The Alleged Contract

The purported contract consists of a 13-page document called "Proposal for Venkat Reddy for Williamson Rd." (the "Proposal"), which was prepared by Ms. Contreras. *Id.* ¶¶ 9, 12; Dkt. 109-4. The first page indicates that the Proposal originates from Solar Micronics, Inc. and is for Mr. Reddy. Dkt. 109-4 at 2. An

---

[1] The facts are drawn largely from defendant's Local Rule 56.1(a) Statement of Material Facts. Dkt. 109. Plaintiff did not respond to this statement or dispute any of the facts with citations to supporting evidentiary material. Accordingly, all defendant's facts are deemed admitted for purposes of summary judgment. *Feliberty v. Kemper Corp.*, 98 F.3d 274, 277 (7th Cir. 1996).

[2] The parties refer to Dr. Visvabharathy as "Dr. Vish" and the Court adopts this abbreviation as well.

2

"Executive Summary – Roofmount" sets forth the contract price ($624,567) and anticipated utility savings over the course of 25 years. *Id.* at 3. The third page has a section entitled "Major Equipment to be installed" and states that the proposed "Solar Electric (PV) System" will consist of "430 tier 1 panels" and "2 tier 1 inverters" for the previously stated price of $624,567. Dkt. 109 ¶¶ 15, 16; Dkt. 109-4 at 4. Also on page three is a "Payment Schedule" setting forth amounts due as a "Down Payment" and at various project "Milestones," including "Material Procurement," "Installation Complete," and "City Approval." Dkt. 109 ¶ 18; Dkt. 109-4 at 4.

Following a page with information about "Carbon Footprint," the Proposal includes a five-page "Proforma Amortization Schedule" for a loan to finance the entire project. Dkt. 109 ¶ 28; Dkt. 109-4 at 6-10. The next three pages describe the "Solar Micronics, Inc. Team" and provide examples of past projects. Dkt. 109-4 at 11-13. The last page of the Proposal has a section entitled "Scope of Work" which states, among other things, "Provide all materials and labor related to install of the system." Dkt. 109 ¶ 17; Dkt. 109-4 at 14. The Proposal further indicates that "Major equipment as supplied by third-party(ies) manufacturer(s) shall be warranted . . . as detailed below." *Id.* The Proposal then lists six types of equipment (solar panels, string inverter, micro-inverters, optimizers, racking system) and the years each will be under warranty. *Id.* Written signatures at the bottom of the page appear to be from Mr. Reddy and Dr. Vish, though there are no typewritten names. Dkt. 109 ¶

14; Dkt. 109-4 at 14. Both signatures are dated in late October 2019. Dkt. 109-4 at 14.

## B. Testimony About Additional Contract Terms

Plaintiff claims that Ms. Contreras and Dr. Vish had oral discussions with Mr. Reddy about additional contract terms. At her deposition, Ms. Contreras testified that before she met Mr. Reddy to sign the Proposal, she called him to review the design and also wrote down the system size from rooftop to carport. Dkt. 109 ¶ 12. Ms. Contreras also says she personally witnessed Mr. Reddy sign the Proposal in October 2019 while she was in Virginia.[3] *Id*. ¶ 13. At the time, Ms. Contreras was communicating with equipment vendors but could not prepare a budget because the project design had not been finalized and she did not know the quantity of equipment needed. *Id*. ¶ 19. Ms. Contreras believes she finalized the design sometime in 2020 or 2021. *Id*. ¶ 20.

With respect to the work and payment schedule, Ms. Contreras testified that she discussed both terms with Mr. Reddy when he signed the Proposal. *Id*. ¶ 23. According to Ms. Contreras, the conversation covered when work would commence and the fact that "Milestone 1 – Material Procurement" was supposed to occur some

---

[3] Defendant denies that plaintiff can rely on Ms. Contreras' testimony to establish that Mr. Reddy actually signed the Proposal. Dkt. 108 at 11. Plaintiff has responded to this concern by submitting a report from forensic expert Khody R. Detwiler attesting that he compared "known Venkat Reddy signatures" with the signature on the last page of the Proposal and determined that Mr. Reddy ***probably wrote*** that signature. Dkt. 114 at 1-2, 51, 64 (emphasis in original). Defendant objects to the sufficiency and accuracy of this report, Dkt. 117 at 6, but on summary judgment the evidence is viewed in a light most favorable to plaintiff. *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Accordingly, the Court will assume for purposes of this motion that Mr. Reddy's signature is authentic.

4

time after finalization of the project design and after Mr. Reddy paid $312,283. *Id*.

¶¶ 23, 24, 25. Explaining further, Ms. Contreras testified that she told Mr. Reddy:

"as soon as we finalized the design, at the time of procurement this will be due . . .

I'm not going to purchase the material out of pocket." *Id*. ¶ 26.

## C. Payment and Financing

Though the "Proforma Amortization Schedule" comprised nearly a third of

the Proposal, Dr. Vish testified at his deposition that this was "just an option" and

Mr. Reddy told him during "many conversations" that he (Mr. Reddy) would "come

up with cash." *Id*. ¶ 29. Email messages from October 2020, however, indicate that

Venkat needed to have "the whole solar system financed." *Id*. ¶ 31. A couple months

later in December 2020, plaintiff's Assistant Vice President, Kirthiga

Krishnamurthy, sent a message to Mr. Reddy's email account offering a lease to

purchase option to finance part of the project. *Id*. ¶ 32; Dkt. 109-6 at 2-5. Ms.

Krishnamurthy indicated that the project "cannot be financed 100%" so Mr. Reddy

would need to put down $170,800. *Id*. On December 3, 2020, Ms. Krishnamurthy

received the following response from Mr. Reddy's email account: "Sorry, these terms

are not what we were [sic] had agreed when the project was conceived. Kindly STOP

ALL WORK ON THIS PROJECT." Dkt. 109 ¶ 32; Dkt. 109-6 at 6. A follow-up email

the same day said "I don't want to proceed with the solar power system . . . Kindly

treat this as a . . . Termination of all aggremination [sic]." Dkt. 109 ¶ 32; Dkt. 109-6

at 7. Plaintiff says that these emails constitute Mr. Reddy's breach of the Proposal.

It appears that this exchange did not end communications, as on January 13, 2021, Dr. Vish sent an email to Mr. Reddy's account about a proposed master lease to finance the project. Dkt. 109 ¶ 33; Dkt. 109-7. Dr. Vish sent a second email on January 28, 2021 stating "[w]e are working on getting you a term sheet for 100% financing." Dkt. 109 ¶ 34; Dkt. 109-8. The email further indicated that "[o]nce we get the term sheet, and once we ascertain the timeline for the legal structure for the Master lease to be established, we will be able to give you a project timeline." *Id*. There is no evidence in the record that Mr. Reddy saw or responded to either email.

## D.     The Lawsuit and Addendum

Plaintiff filed suit against Mr. Reddy in the Circuit Court of Cook County on July 6, 2021, alleging breach of contract. Dkt. 109 ¶ 35. Over the next few months, Dr. Vish exchanged additional emails with Mr. Reddy's account. In August 2021, it appeared that Mr. Reddy wanted to proceed with the project for the original contract price and with full financing. *Id*. ¶ 36; Dkt. 109-9. In September 2021, the terms changed to include a 20% price increase, and an email sent from Mr. Reddy's account indicated that the project should proceed. Dkt. 109 ¶ 37; Dkt. 109-10 at 2-3. On October 15, 2021, Dr. Vish sent Mr. Reddy's email account a document entitled "Addendum to the solar contract dated October 25, 2019" (the "Addendum"). Dkt. 109 ¶ 38. The Addendum requested a signature from Mr. Reddy affirming that he authorized plaintiff to proceed with the solar panel work, understood the new contract price was $749,480.40, and was tendering a check in the amount of

$312,283 for material procurement "in accordance with the terms of the contract." *Id.*; Dkt. 109-11.

Mr. Reddy died the following month without signing the Addendum. Dkt. 109 ¶¶ 2, 40. Approximately six months later, Anitha Reddy substituted into the lawsuit as Mr. Reddy's heir ("defendant"). *Id.* ¶ 4. Defendant then removed the case to federal court pursuant to diversity jurisdiction and filed a countersuit against plaintiff and another company owned by Dr. Vish and Ms. Contreras, Hawthorne Development Corporation, for violation of the Illinois Credit Services Organizations Act, 815 ILCS 605/1 *et seq.*[4] Dkt. 1; Dkt. 15. The parties subsequently consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

In its second amended complaint, plaintiff alleges that Mr. Reddy breached the Proposal by canceling plaintiff's services in December 2020 without any contractual right to do so. Dkt. 60, Count I. Though plaintiff never ordered materials or began construction on the project, it seeks $452,425.65 in damages. *Id.* ¶ 16. Alternatively, plaintiff seeks $567,986.11 in damages for Mr. Reddy's breach of an alleged September 2021 settlement agreement whereby plaintiff would dismiss the lawsuit in exchange for Mr. Reddy proceeding with the project at a 20% price increase. *Id.*, Count II and ¶ 29. Defendant argues that plaintiff cannot succeed on either claim.

---

[4] The Court dismissed defendant's other two counterclaims in July 2023. Dkt. 59.

# DISCUSSION

## A.    Standard of Review

"Summary judgment is proper when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law." *Felton v. Brown*, __ F.4th __, 2025 WL 595983, at *7 (7th Cir. 2025); FED. R. CIV. P. 56(a). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (quoting *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018)). In considering a motion for summary judgment, the Court "views 'the facts and draw[s] reasonable inferences in the light most favorable to the non-moving party.'" *Thornhill v. TransUnion, LLC*, No. 23 C 4352, 2025 WL 588623, at *1 (N.D. Ill. Feb. 24, 2025) (quoting *Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023)); *see also Hutchison*, 910 F.3d at 1021. That said, the non-movant "must do more than raise 'some metaphysical doubt as to the material facts' [and must] instead 'present affirmative evidence in order to defeat a properly supported motion.'" *Fullilove v. City of Chicago*, No. 24 C 2875, 2025 WL 474089, at *3 (N.D. Ill. Feb. 12, 2025) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

## B.    Analysis

Defendant argues that plaintiff's breach of contract claims fail as a matter of law because it cannot establish that it reached a meeting of the minds with Mr. Reddy on the material terms of the written Proposal, or prove that Mr. Reddy

entered into a binding agreement to settle the lawsuit in exchange for proceeding with the solar energy project. To succeed on either claim, plaintiff must prove "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 1011, 1020 (N.D. Ill. 2023) (quoting *Ivey v. Transunion Rental Screening Sols., Inc.*, 2022 IL 127903, ¶ 28, *reh'g denied* (Jan. 23, 2023)); *see also Miksis v. Evanston Township High Sch. Dist. #202*, 235 F. Supp. 3d 960, 995 (N.D. Ill. 2017).

To have a valid and enforceable contract, there must be an "offer, acceptance and consideration." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022) (quoting *Fuqua v. SVOX AG*, 2014 IL App (1st) 1331429, ¶ 35). *See also Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 301, 847 N.E.2d 99, 109 (2006) ("In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract.") (citation omitted). A binding offer and acceptance requires that the parties "mutually assent to definite and certain terms." *Id*. That is, "the material terms of a contract must [ ] be definite and certain" such that "'a court is able to ascertain what the parties agreed to . . .'" *Id*. (quoting *Szafranski v. Dunston*, 2015 IL App (1st) 122975-B, ¶ 67 (citation omitted)).

### 1. Admissible Evidence

Before turning to the substantive arguments, the Court first considers two preliminary matters: (1) the admissibility of testimony from Ms. Contreras and Dr. Vish concerning conversations they say they had with Mr. Reddy before he died;

and (2) the admissibility of communications made to and from Mr. Reddy's email account.

### a. The Illinois Dead Man's Act

Defendant argues that any conversations Ms. Contreras and Dr. Vish purportedly had with Mr. Reddy prior to his death are inadmissible under the Illinois Dead Man's Act, 735 ILCS 5/8-201. Dkt. 108 at 10-11. The Act provides in relevant part:

> In the trial of any action in which any party sues or defends as the representative of a deceased person . . ., no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased . . . or to any event which took place in the presence of the deceased . . .

735 ILCS 5/8-201. The purpose of the statute is to "protect decedents' estates from fraudulent claims and also to equalize the position of the parties with respect to giving testimony." *Ball v. Kotter*, 723 F.3d 813, 820 (7th Cir. 2013). The Act bars "evidence which the decedent could have refuted" in recognition of a representative's "inability . . . to oppose the statements of the adversary." *Id.* at 948. The Act is applicable to this federal diversity case because it is governed by Illinois law. *Zang v. Alliance Fin. Servs. of Illinois, Ltd.*, 875 F. Supp. 2d 865, 877 (N.D. Ill. 2012) ("[W]here, as here, Illinois law supplies the rule of decision for all of plaintiff's … claims, the Act is indeed applicable to determine the admissibility of evidence.").

There is no dispute that Dr. Vish and Ms. Contreras are adverse parties with a direct interest in this lawsuit. The Dead Man's Act thus precludes them from

testifying on their own behalf about conversations they had with Mr. Reddy concerning the solar energy project. Plaintiff attempts to avoid this conclusion by arguing that defendant waived the protections of the statute pursuant to the following exception:

> If any person testifies on behalf of the representative to any conversation with the deceased . . . or to any event which took place in the presence of the deceased . . ., any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event.

Dkt. 113 at 3-5 (quoting 735 ILCS 5/8-201(a)). Under this provision, "[i]f the deceased's representative introduces testimony concerning an event which occurred in the deceased's presence, the representative has waived the protections of the act, and the opposing party may present testimony concerning the event to avoid presenting a one-sided picture of the occurrence to the trier of fact." *Scheiner v. Guffey*, No. 20 C 38, 2021 WL 5359587, at *7 (S.D. Ill. Nov. 17, 2021). Plaintiff argues that since defendant has "relied" on Mr. Reddy's conversations to support her summary judgment motion, plaintiff must be allowed to rely on that evidence as well. Dkt. 113 at 5. This argument is without merit.

Contrary to plaintiff's suggestion, defendant has not testified about any conversations she had with Mr. Reddy, was not a party to his conversations with Dr. Vish and Ms. Contreras, and has not presented evidence as to Mr. Reddy's version of what was discussed. As a result, the exception does not apply. *Compare Hoem v. Zia*, 159 Ill. 2d 193, 636 N.E.2d 479 (1994) (finding waiver of Act where decedent's widow supported her case in chief at trial with testimony from a retained expert who opined about conversations and events that took place in front of the

11

decedent). The mere fact that defendant deposed Dr. Vish and Ms. Contreras about the conversations and cites that testimony in explaining why it is inadmissible does not mean defendant has waived application of the Act's protections. *Scheiner*, 2021 WL 5359587, at *7 ("[T]aking a deposition or otherwise investigating the circumstances surrounding [an event] does not constitute waiver" of the Act); *Dohrmann v. Swaney*, 2014 IL App (1st) 131524, ¶ 27 ("[I]t strains logic to construe the . . . Act in a manner that forces litigants to proceed to trial when it would be evident from an application of the . . . Act, in the context of a summary judgment proceeding, that a litigant cannot prove his case.") (internal quotations omitted).

Admitting the testimony from Dr. Vish and Ms. Contreras about the substance of conversations they purportedly had with Mr. Reddy would result in a "one-sided picture" – exactly what the Dead Man's Act is designed to prevent. Accordingly, in evaluating plaintiff's breach of contract claims, the Court will not consider any of that testimonial evidence.

### b. Emails

Defendant also seeks to bar consideration of the email messages sent among Mr. Reddy, Dr. Vish, and Kirthiga Krishnamurthy, arguing that plaintiff cannot lay the necessary foundation. Dkt. 108 at 12-13. Under Rule 901(a), emails are admissible if "authenticated by 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *U.S. v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012). Authentication can be established with direct or indirect proof. Direct proof of authenticity consists of testimony by the author, or by someone who witnessed

12

the author sending the emails, "attesting that the documents in question are the actual, un-doctored emails sent by the authors." *Strabala v. Zhang*, 318 F.R.D. 81, 95 (N.D. Ill. 2016)*; see also Devbrow v. Gallegos*, 735 F.3d 584, 586-87 (7th Cir. 2013). Plaintiff has not submitted affidavits from Dr. Vish or Ms. Krishnamurthy attesting that the emails they personally sent to Mr. Reddy are authentic and un-doctored. For purposes of summary judgment, however, the Court assumes that they will be able to supply such attestations and those communications are therefore admissible. *Sullivan*, 63 F.4th at 1141 (on summary judgment the evidence is viewed in the light most favorable to the non-moving party).

As for emails that Mr. Reddy sent to Dr. Vish and Ms. Krishnamurthy, plaintiff must rely on indirect evidence of authenticity. This "generally consists of testimony from someone who personally retrieved the e-mail from the computer to which the e-mail was allegedly sent together with other circumstantial evidence such as the e-mail address in the header and the substance of the email itself." *Strabala*, 318 F.R.D. at 95 (internal quotations omitted); *see also Devbrow*, 735 F.3d at 586-87. Defendant concedes that the emails originated from an account that Mr. Reddy used, Dkt. 109 ¶ 31, and the substance of the emails concerns the solar energy project proposal. Since there is nothing in the record to indicate that anyone other than Mr. Reddy used his email account to discuss the terms of the Proposal, these facts constitute circumstantial evidence that Mr. Reddy is the one who sent the messages. Additionally, the Court once again presumes for purposes of this

13

motion that Dr. Vish and Ms. Krishnamurthy will be able to attest that they personally retrieved the emails from their computers.

Defendant contends that any such attestation would be barred by the Dead Man's Act. Dkt. 108 at 13; Dkt. 117 at 9. The only case she cites for that proposition, however, is distinguishable. The plaintiff in *In re Estate of Miller*, 189 Ill. App. 3d 171, 544 N.E.2d 1279 (2d Dist. 1989), filed a petition to contest his father's will. *Id.* at 172, 544 N.E.2d at 1279. A key issue was whether the father was of sound mind and memory on June 6, 1985, the day he signed the will. *Id.* at 177, 544 N.E.2d at 1283. The plaintiff sought to admit a cassette tape containing 14 telephone messages his father purportedly left on his telephone answering machine between October 24, 1984 and June 30, 1985 that allegedly showed the father was incapacitated. *Id.*, 544 N.E.2d at 1283. The court found the tape inadmissible under the Dead Man's Act because the only person who could testify as to the timing of the messages was the plaintiff and the father was not around to dispute plaintiff's claims. *Id.* at 178, 544 N.E.2d at 1283.

Here, there is no dispute about the dates on the emails or about the statements they contain. Therefore, the Court will consider the emails in deciding this motion. That said, the Court will not rely on any conversations relating to those emails, or consider testimony from Dr. Vish and Ms. Krishnamurthy about those emails that only Mr. Reddy could refute.

14

###### 2. The Written Proposal

Defendant seeks summary judgment on Count I of the complaint on the grounds that plaintiff cannot prove it had a meeting of the minds with Mr. Reddy as to the material terms of their agreement as required for an enforceable contract. "A material term is 'a contractual provision that deals with a significant issue such as price, payment terms, duration, or the duty to be performed.'" *Bochat v. Ambit Illinois, LLC*, No. 24 C 3116, 2025 WL 306326, at *4 (N.D. Ill. Jan. 27, 2025) (quoting *Gordon v. Landfill, LLC*, 2021 IL App (5th) 200383-U, ¶ 21). As noted, the Proposal: identifies the relevant parties; provides for installation of 430 "tier 1" panels and two "tier 1" inverters; indicates that major equipment will be purchased from third-party manufacturers with certain warranties for "solar panels," "string inverters," "micro-inverters," "optimizers" and a "racking system"; sets forth a contract price of $624,567; and contemplates a payment schedule based on certain "Milestones." Dkt. 109-4. Plaintiff insists that this is more than sufficient to demonstrate the existence of a valid and enforceable contract. Dkt. 113 at 6-7.

Defendant points out that other important information is missing. For example, aside from Ms. Contreras' inadmissible testimony, there is no evidence that Mr. Reddy actually reviewed the pages of the Proposal he did not sign. Dkt. 108 at 11; Dkt. 117 at 6-7. In addition, the Proposal says nothing about: the design of the solar energy system; the brands, models, and specifications for the inverters and solar panels (e.g., whether they will be monocrystalline or polycrystalline); or the identities of the third-party manufacturers. Dkt. 109 ¶¶ 16, 17, 19; Dkt. 117 at

15

9. Nor does the Proposal make clear that the stated number of solar panels and inverters was intended as an estimate until the design was finalized. Dkt. 109 ¶ 19; Dkt. 109-2, Dr. Vish Dep. at 31. And the Proposal provides no indication as to when installation work was supposed to begin and end. Dkt. 109 ¶¶ 21, 23. Plaintiff notes that "[w]hen a contract does not specify a deadline for performance, a reasonable time will be implied.'" Dkt. 113 at 8 (quoting *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 829 (7th Cir. 2020)). That may be, but plaintiff fails to explain how it can establish what constitutes a reasonable time in this case without resorting to inadmissible conversations Dr. Vish and Ms. Contreras purportedly had with Mr. Reddy. *See Wilmette Partners v. Hamel*, 230 Ill. App. 3d 248, 257, 594 N.E.2d 1177, 1184 (1st Dist. 1992) ("What constitutes a reasonable time is a matter of proof under all the conditions and circumstances that might surround the case.").

Even putting those issues to one side, no reasonable jury could find that the parties had a meeting of the minds as to when and how Mr. Reddy was going to pay for the solar energy system. Ms. Contreras testified that with respect to Milestone 1 of the Payment Schedule, it was very important that the company receive a $312,283 payment *before* it would proceed with "Material Procurement" for the project. Dkt. 109 ¶¶ 25-27; Dkt. 109-3, Contreras Dep. at 48 ("I'm not going to purchase the material out of pocket."). Ms. Contreras characterized this as a material term, but the Proposal says nothing about prepayment and there is no indication (aside from Ms. Contreras' inadmissible testimony) that Mr. Reddy was

aware of such a requirement.[5] Dkt. 109 ¶¶ 24, 27; Dkt. 109-3, Contreras Dep. at 47, 48. The Milestone 1 term is sufficiently ambiguous that Ms. Contreras acknowledged she has to have a conversation with "pretty much . . . everyone" of her customers to explain it "because they do ask." Dkt. 109 ¶ 26; Dkt. 109-3, Contreras Dep. at 48.

The "how" of payment (cash or financing) is also entirely unclear. Since prepayment was a prerequisite for material procurement, and installation could not begin without materials, this was an important part of the parties' agreement. As noted, the Proposal includes a five-page Proforma Amortization Schedule to finance the entire project with a loan. Dkt. 109-4 at 6-10. According to Dr. Vish, this was "just an option" and he believed Mr. Reddy would pay in cash. Dkt. 109 ¶ 29. But this belief hinges on inadmissible conversations Dr. Vish purportedly had with Mr. Reddy. The Proposal itself does not say anything about a cash payment. Nearly a year after the parties signed the Proposal, on October 1, 2020, Dr. Vish sent an email stating that Mr. Reddy had "originally mentioned putting down $100 K as down payment, and you later on . . . increased it to $200 K. But now, you are not putting down any amount." Dkt. 109-5. Dr. Vish asked Mr. Reddy to "[p]lease guide us . . . so we know how to proceed." *Id*. There is no written documentation indicating that Mr. Reddy ever agreed to make the referenced cash down payment, and his response to the email expressly confirmed the contrary: "No sir, I'm going to need

---

[5] Notably, Dr. Vish testified that unlike for Milestone 1, payment for the other two Milestones was due *after* plaintiff completed its obligations to finish the installation and get city approval, though this is not reflected on the face of the Proposal either. Dkt. 109-2, Dr. Vish Dep. at 29.

17

the whole solar system financed." *Id*. Based on these emails, no reasonable jury could find that Mr. Reddy and Dr. Vish were in agreement as to how Mr. Reddy would be paying for the project at the time they signed the Proposal.

Plaintiff argues that the Court cannot consider the emails because "Illinois law adheres to a 'four corners rule' of contract interpretation, meaning that when an agreement is reduced to writing, '[it] must be presumed to speak the intention of the parties who signed it.'" Dkt. 113 at 7 (quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005)). This argument ignores the fact that plaintiff is claiming Mr. Reddy breached the Proposal two months later in December 2020 by sending emails terminating the project. *Id*. at 9. Significantly, Mr. Reddy did not send those emails in a vacuum: he was responding to an email from Assistant Vice President Krishnamurthy offering a lease to purchase option with a down payment of $170,800. Dkt. 109 ¶ 32; Dkt. 109-6 at 2-5. Mr. Reddy rejected the offer and asked to terminate the project because the terms did not reflect "what we were [sic] had agreed when the project was conceived." Dkt. 109 ¶ 32; Dkt. 109-6 at 6, 7. If the emails are admissible in assessing whether Mr. Reddy breached the Proposal, they are also admissible in assessing whether the parties agreed on payment terms.

Based on Dr. Vish's email to Mr. Reddy in January 2021, moreover, it is evident that the parties could not simply proceed with the Proposal under the original financing terms as plaintiff suggests. Dkt. 113 at 7. Rather, as Dr. Vish explained, "100% financing is possible" but "please be prepared for considerable legal costs, in excess of $50,000." Dkt. 109-7. This was not something contemplated

18

by the written Proposal. Even viewing the facts in a light most favorable to plaintiff, there is insufficient admissible evidence available to allow a reasonable jury to conclude that the parties had a meeting of the minds as to all material terms of the Proposal as needed for a binding contract. Defendant's motion for summary judgment on Count I is therefore granted.

### 3. The Alleged Settlement Agreement

Defendant argues that summary judgment is also merited on Count II of the complaint because plaintiff cannot demonstrate that Mr. Reddy agreed to proceed with the project in exchange for settling plaintiff's lawsuit. A settlement agreement is "enforced just like any other contract." *Miksis*, 235 F. Supp. 3d at 995 (quoting *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002)). As noted, "[a] meeting of the minds sufficient to form an enforceable contract requires that the parties 'assent[ed] to the same things in the same sense on all essential terms and conditions.'" *Id*. (quoting *Quinlan v. Stouffe*, 355 Ill. App. 3d 830, 839, 823 N.E.2d 597, 604 (4th Dist. 2005)).

Plaintiff filed its breach of contract suit on July 6, 2021. The following month on August 9, 2021, Dr. Vish sent Mr. Reddy an email stating "we will honor the old price of the contract even though our costs have gone up since your contract signing." Dkt. 109 ¶ 36; Dkt. 109-9. A week later on August 16, 2021, Dr. Vish received an email from Mr. Reddy as follows: "Sir, I'm willing to go ahead with this project. Kindly let me know if you can provide [sic] with the initial payment. Right now I don't have the funds to invest. Thanks." Dkt. 109 ¶ 36. Dr. Vish responded

19

that "[w]e are working on . . . getting you 100 percent financing except for some
financing costs."[6] *Id*.

According to plaintiff, on September 23, 2021, Dr. Vish sent another email
offering to dismiss the lawsuit if Mr. Reddy agreed to proceed with the project at a
20% price increase. The email in question stated: "material prices have significantly
gone up in the past several months when we did not hear from you. Besides, with
huge labor shortages, skilled solar labor is more costly than before, so we are
looking at a 20 percent increase in the cost of your solar installation. Kindly confirm
that this will be acceptable to you. Thanks." Dkt. 109 ¶ 37; Dkt. 109-10 at 2-3. Mr.
Reddy allegedly accepted this offer by responding, "I do understand, but we have to
proceed with this job. Kindly go ahead with the process. Thank[s]." Dkt. 109 ¶ 37;
Dkt. 109-10 at 2.

According to plaintiff, these email communications raise a question of fact as
to whether Mr. Reddy agreed to settle the lawsuit because: (1) they took place after
Mr. Reddy terminated the initial contract in December 2020; and (2) Mr. Reddy
agreed to proceed with the project at an increased price. Dkt. 113 at 12. This
argument fails because the emails say nothing about the lawsuit and give no
indication that Mr. Reddy understood he was agreeing to settle any litigation. In
fact, there is no evidence to suggest that Mr. Reddy even knew the lawsuit had been
filed against him. Dr. Vish testified that he cannot recall if he told Mr. Reddy about
it, Dkt. 109 ¶ 35, and the record is silent on the matter. No reasonable jury could

---

[6] Neither the August 16, 2021 email nor the response to it is attached as an exhibit to the
motion.

conclude that the emails, on their face, prove that Mr. Reddy intended to settle the lawsuit or that he and Dr. Vish reached a meeting of the minds to that effect. Even the Addendum, which Mr. Reddy never signed, makes no reference to the lawsuit. Dkt. 109-11 at 3.

Plaintiff suggests it does not matter that Mr. Reddy was unaware of the lawsuit because he "knew he breached the Contract and agreed to a new deal with Plaintiff to resolve the breach." Dkt. 113 at 13. But we do not know what was in Mr. Reddy's mind and there is no admissible evidence available for the jury to consider that could resolve the question. Plaintiff can show only that it offered different financing terms in December 2020 and Mr. Reddy did not accept them. The mere fact that Mr. Reddy subsequently indicated a desire to proceed with the project does not also establish his knowledge of, or concession that he committed, an earlier breach. Notably, the word breach appears nowhere in the emails or the Addendum.

Viewing the facts in a light most favorable to plaintiff, there is not sufficient admissible evidence for a reasonable jury to conclude that plaintiff and Mr. Reddy mutually agreed to settle this lawsuit in exchange for Mr. Reddy proceeding with the solar energy project. Defendant's motion for summary judgment on Count II is granted.

## <u>CONCLUSION</u>

For the reasons stated above, defendant's motion for summary judgment

[107] is granted.

**SO ORDERED.**

**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 3/13/2025